**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                    **Case No. 2:21-cr-00062-1**

**LARRY ALLEN CLAY, JR.**

**MOTION FOR A NEW TRIAL**

Comes now the defendant Larry Allen Clay, Jr. (hereinafter Mr. Clay) by and through the undersigned counsel Sebastian M. Joy, and hereby respectfully moves the court to order a new trial based on Rule 34 of the Federal Rules of Criminal Procedure in support of which Mr. Clay submits the following to this Honorable Court.

**FACTUAL BACKGROUND**

In September 2020, the United States formally charged the defendant, Mr. Clay, with the alleged crime of sex trafficking of a minor via coercion.  The United States alleges that Mr. Clay paid Ms. Neylor-Legg the sum of 100 dollars for the purpose of causing the alleged victim to engage in a sexual act with Mr. Clay.  On April 27, 2021, The United States filed the first indictment against Mr. Clay.  ECF No. 28.  On June 3, 2021, the Court granted Mr. Clay's first motion to continue due to obtaining new counsel.  ECF No. 64.

On July 7, 2021, The United States filed the first superseding indictment against Mr. Clay.  ECF No. 70.  On August 8, 2021, The United States filed the second superseding indictment against Mr. Clay.  ECF No. 80. On September 30, 2021, The United States filed the third superseding indictment against Mr. Clay.  ECF No.109.  On November 11, 2021, the Court granted Mr. Clay's motion to continue due to retaining an expert witness.  ECF No. 128.  On January 31, 2022, the Court granted Mr. Clay's motion

1

to continue due to retaining an expert witness.  ECF No. 136.  On March 29, 2022, the Court granted the Unites States motion to continue.  ECF No. 150.  On July 1, 2022, the Court granted Mr. Clay's motion to continue due to a witness being unavailable.  ECF No. 187.   On October 4, 2022, The United States filed the fourth superseding indictment.  ECF No. 208.   On November 1, 2022, The United States filed the fifth superseding indictment against Mr. Clay.  ECF No. 213.  This fifth superseding indictment did not have any substantive changes in the charges.  Furthermore, there was no additional discovery in this case either.

At this time, the court Sua Sponte continued the Jury Trial date in this matter and set it for 1/17/2023.  The undersigned counsel filed a Motion to Reinstate the original trial date in this matter, ECF No. 218, and the court OVERRULED this Motion, ECF No. 219.  Mr. Clay moved for the dismissal of the criminal charges against him for a violation of his speedy trial rights.  ECF No. 227, the Court denied Mr. Clay's motion.  ECF 230.  Mr. Clay's trial was moved twice more.  Once on the motion of Mr. Clay due to the undersigned counsel being in a trial in the Eastern District of Kentucky, London Division, ECF No. 235.  The Court sua sponte continued the trial without issuing a finding, as is required under 18 U.S.C. § 3161 (h) (7) (A) for the time to be excludable.  A criminal trial commenced on April 25, 2023.  The trial ended in a guilty verdict on April 28, 2023.  Mr. Clay moves for a new trial based on procedural errors which unfairly prejudiced the defendant in the eyes of the jury.

## STANDARD FOR A NEW TRIAL

Rule 33 of the Federal Rules of Criminal Procedure lays out when a defendant can move for a new trial.  Upon the defendant's motion, the court may vacate any judgment

2

and grant a new trial if the interest of justice so requires…  Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.  Fed.  R. Crim. P. 33.  Pursuant to Federal Rule of Criminal Procedure 33, the court, upon the defendant's motion, may vacate any judgment and grant a new trial "if the interest of justice so requires." Fed.  R. Crim.  P. 33(a).  United States v. Thompson, 7:21-CR-00019-3, 2023 WL 3091889, at *2 (W.D. Va. Apr. 26, 2023.)  Rule 33 allows a district court to grant a new trial in the interest of justice. United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir. 1985.)  When the motion attacks the weight of the evidence, the court's authority is much broader than when it is deciding a motion to acquit on the ground of insufficient evidence.  Id.  In deciding a motion for a new trial, the district court is not constrained by the requirement that it views the evidence in the light most favorable to the Government.  Id.  Thus, it may evaluate the credibility of the witnesses.  Id.  When the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, the court should grant a new trial.  Id.

## ARGUMENT

The defense recognizes that there is a high burden that it must meet for a judgment to be set aside and a new trial ordered; the defense firmly believes that it will meet that burden and show the Court that justice demands a new and FAIR trial.  The sixth amendment to the U.S. Constitution guarantees the right to a fair trial.  It is the undersigned counsel's job to ensure that Mr. Clay had a fair trial.  There were several issues that arose during the trial that the undersigned counsel believes prejudiced the jury against Mr. Clay and resulted in an unfair trial.

i.   **Evidence was admitted improperly.**

On June 29, 2023, the undersigned counsel submitted a Motion in Limine along with an objection to a disclosure of supplemental evidence the AUSA indicated she intended to introduce at the trial.  The undersigned counsel objected in writing to the inclusion of a new statement made by the alleged victim.  This statement concerned the first alleged incident of trafficking; the alleged victim stated that the co-defendant asked Mr. Clay for fifty (50) dollars for the purpose of purchasing marijuana, which, according to the alleged victim, Mr. Clay supplied.

On the same date, the AUSA made the undersigned counsel aware of the statement by the alleged victim; the undersigned counsel was made aware of a statement by witness Chasity Niday.  The AUSA indicted that Ms. Niday would testify to an alleged statement Mr. Clay gave her wherein he is alleged to say to Ms. Niday, "If he ever asked her to get rid of her phone, then she should get rid of it."  As was noted in the Motion in Limine, "Given that this was not specifically tied to any attempt to obstruct any investigation, the evidence is arguably not a bad act at all and thus does not fall under Rule 404(b).   The AUSA also indicates that Ms. Niday will testify that as to her prior relationship with Mr. Clay, he would direct her to engage in sexual activity with other individuals and would sometimes arrange for these encounters to occur at the Fayette County Sheriff's Office during times when the defendant could control who entered the building.  ECF No. 181.  The United States introduced testimony from Ms. Niday that he asked her to "get rid of her phone." There was no similarity between the remaining parts of Mrs. Niday's testimony that is relevant to the charges at hand.  The United States attempted to back door in testimony that was not relevant to this case by using the cover

of "intent, plan and lack of mistake." This evidence was prejudicial and had no probative value to speak of.  It was simply meant to confuse the jury and inflame the passions of the jury, which is what the undersigned counsel believes led to an improper guilty verdict.

The situation is analogous to <u>United States v. Johnson</u>, 617 F.3d 286, 296-299 (4th Cir. 2010), in which the court reversed a drug conspiracy conviction due in part to the admission of evidence of the defendant's drug activity five years earlier, in a different state, and using dissimilar method of sale and distribution.

ii.     **Mr. Clay's Right to a Speedy Trial was violated.**

On December 24, 2022, Mr. Clay moved for a dismissal of his charges as there was a violation of his right to a speedy trial.  In that Motion to Dismiss, the undersigned counsel noted the reasons why the charges should have been dismissed.  The Speedy Trial Act generally requires that a criminal trial begins within seventy days of the filing of an information or indictment or the defendant's initial appearance.  <u>United States v. Henry</u>, 538 F. 3d 300, 303 (4th Cir. 2008).   This requirement protects the interests of both the defendant and the public in a speedy trial and the public interest in preventing and deterring crime.  <u>Id.</u>  To allow for necessary flexibility in scheduling, the Act provides that certain delays may be excluded from the seventy-day count, including delays where the district court finds that the "ends of justice" served by… granting… a continuance outweigh the best interests of the public and the defendant in a speedy trial.  <u>Id.</u>

Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such a continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the

5

public and the defendant in a speedy trial.  18 U.S.C. § 3161 (h) (7) (A).  No such period of delay resulting from a continuance granted by the Court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting such continuance outweigh the best interests of the public and the defendant in a speedy trial.  Id.

On July 28, 2022, this Court ordered that the time between August 23, 2022, and December 13, 2022, be excluded from the days which count for the speedy trial clock. However, the United States then added a fourth and fifth superseding indictment against Mr. Clay, in which case the Speedy Trial Clock restarted.  The Government had 70 days from the time Mr. Clay was arraigned on the fourth superseding indictment to bring Mr. Clay to trial.  However, a superseding indictment with additional charges can also be sufficient to restart the speedy trial clock.  United States v. Mattocks, 4:21CR6, 2022 WL 3368806, at *4 (E.D. Va. June 15, 2022), reconsideration denied, 4:21CR6, 2022 WL 3368807 (E.D. Va. July 7, 2022).

In Mattocks, the Court held that at least one new charge could justify a superseding indictment where no new defendant was added to the case.  Id.  The defendant argued that the United States added a superseding indictment just to manipulate the speedy trial rule.  Id.  The court disagreed with the defendant and held that the charge the United States added was a distinct and separate charge related to the defendant shooting at an individual in the course of the drug conspiracy, as opposed to the original… charge… that related to possessing and carrying a firearm during a substantive drug count.  Id.  The

6

court held that such a charge does justify a superseding indictment and, as such, does reset the speedy trial clock.  Id.

In the instant case, the United States filed a superseding indictment on October 4, 2022, for which Mr. Clay was arraigned on October 14, 2022.  ECF at 212.  The fourth superseding indictment included a new charge, count four (obstruction of justice), so the speedy trial clock reset on the day Mr. Clay was arraigned on that fourth superseding charge.  Seventy days from that arraignment is December 23, 2022.  On July 28, 2022, this Court granted Mr. Clay's motion to continue the jury trial to December 13, 2022, and this Court ordered that the time between August 23, 2022, and December 13, 2022, be excluded from the speedy trial clock.  However, once Mr. Clay was arraigned on the fourth superseding charge, the clock resets and this Court did not choose to again find that the time between August 23, 2022, and December 13, 2022, was excludable.  ECF at 212. Therefore, the time that was previously excluded can no longer be excluded due to the clock resetting.  The clock can not reset for the United States, with the time after the reset also continuing to be excluded.  It is a nonsensical notion that the speedy trial clock can be reset in favor of the United States and not equally apply to Mr. Clay, for whose rights the Founders of this great nation were so concerned about that they addressed the issue in the sixth amendment to the U.S. Constitution.

iii.    **No Evidence of Coercion was Introduced.**

On the first day of the trial, the Court gave instructions to the jury about what the United States needed to prove in order to find Mr. Clay guilty.  The Court instructed the jury that they must find that the United States prove every element of the crimes charged beyond a reasonable doubt in order to properly find Mr. Clay guilty.  One of the crucial elements

of the crimes that the United States charged Mr. Clay with violating requires that Mr. Clay coerced the alleged victim.

12        I'll give you detailed instructions at the end of the
13   case, but in order to help you follow the evidence, let me
14   give you a brief summary of what the Government must prove
15   in order to make its case.
16        Count One charges the defendant, Mr. Clay, with
17   conspiracy to engage in sex trafficking of a minor via
18   coercion in violation of 18, United States Code, Sections
19   1591(a) and (e) and 1594(c).
20        1591 states in pertinent part, (a), whoever knowingly,
21   (1), in or affecting interstate or foreign commerce
22   recruits, entices, harbors, transports, provides, obtains,
23   advertises, maintains, patronizes, or solicits by any means
24   a person; or, (2), benefits, financially or by receiving
25   anything of value, from participation in a venture which has

Transcript of Trial Volume 1 at 30, lines 12-25, United States V. Clay 2:21-cr-00062-1, (2023.)

1    engaged in such an act, knowing, or in reckless disregard of

2    the fact, that either, A, means of force, threats of force,

3    fraud, coercion, or any combination of such means will be

4    used to cause the person to engage in a commercial sex act,

5    or that, B, the person has not attained the age of 18 years

6    and will be caused to engage in a commercial sex act, shall

7    be guilty of a crime against the United States; (c), in such

8    prosecution in which the defendant had a reasonable

9    opportunity to observe the person so recruited, enticed,

10   harbored, transported, provided, obtained, maintained,

11   patronized, or solicited, the Government need not prove that

12   the defendant knew, or recklessly disregarded the fact, that

13   the person had not attained the age of 18 years.

Transcript of Trial Volume 1 at 31, lines 1-13, United States V. Clay 2:21-cr-00062-1, (2023.)

 The term "coercion" means, (A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process.  18

U.S.C.A. § 1591 (West).  For the jury to properly have found that Mr. Clay coerced the alleged victim into sexual activity with him, then he would have had to (a) threaten her with serious harm or physical restraint, or (b) have had in place a scheme, plan, or patterned that was intended to cause the alleged victim that the failure to perform the sexual acts on him would result in serious harm to her or the physical restraint of her body; or Mr. Clay would have threatened to use the law or the legal process against her. The United States proffered no evidence to the jury at all to prove the element of coercion.

```
4        You as jurors must decide the case based solely on the
5   evidence presented here within the four walls of this
6   courtroom.  Do not discuss this case among yourselves or
```

Transcript of Trial Volume 1 at 37, lines 4-6, United States V. Clay 2:21-cr-00062-1, (2023.)

```
 8        You must presume this defendant innocent.  The
 9   presumption of innocence alone is enough to find the
10   defendant not guilty.
11        The Government has the burden of proving the
12   defendant's guilt beyond a reasonable doubt.  Unless the
13   Government proves beyond a reasonable doubt that the
14   defendant committed each and every element of the crime
15   charged, you must find the defendant not guilty of that
16   charge.
```

Transcript of Trial Volume 1 at 29, lines 8-16, United States V. Clay 2:21-cr-00062-1, (2023.)

The Court instructed the jury that Mr. Clay was to be presumed innocent, and that presumption was enough to find him not guilty.  The Court instructed the jury that they had to find that the United States proved every element beyond a reasonable doubt.  The Court instructed that the jury was only allowed to consider evidence that was presented during the trial; however, no evidence of coercion was actually introduced.  The United States argued to this Court that the evidence of coercion it was going to introduce was the fact that during the alleged sexual encounters with the alleged victim, Mr. Clay was wearing his law enforcement uniform.

```
16            THE COURT:  For what -- why is that necessary?
17            MS. HERRALD:  Because the testimony is that he had
18   sex with her on those occasions in full uniform and this
19   helps corroborate that that is what he does.  That is a
20   pattern he engages in.  He wears his full uniform while
21   engaged in sex in law enforcement offices.
22            THE COURT:  Would your argument be the same if it
23   were Bermuda shorts?
24            MS. HERRALD:  The case revolves around coercion.
25   So the fact that he was in his police uniform is critical to
```

Transcript of Trial Volume 1 at 11, lines 16-25, United States V. Clay 2:21-cr-00062-1, (2023.)

```
                                                              12
1   the Government's case to prove it's coercion.
```

Transcript of Trial Volume 1 at 12, line 1, United States V. Clay 2:21-cr-00062-1, (2023.)

Ms. Herrald did not inform the Court that Mr. Clay's uniform was the only evidence she intended to proffer to the jury to show Mr. Clay's alleged.  That Mr. Clay was wearing a police uniform during the alleged encounters with the alleged victim cannot properly be the only evidence for a proper and just guilty verdict.  According to the United States' own witness and the alleged victim, Mr. Clay never spoke one threatening word or committed any threatening actions toward the alleged victim during the alleged encounters.  During her opening statement, Ms. Herrald conceded that coercion requires more than just a person wearing a uniform commonly associated with authority.

```
20      Now, coercion means that the victim engaged in the

21   commercial sex act because they were caused to believe that

22   if they did not engage in that sex act, they would suffer

23   serious harm as a result.  And serious harm can include both

24   physical harm and nonphysical types of harm.

25      So with that in mind, let's go back to June of 2020.
```

Transcript of Trial Volume 1 at 41, lines 20-25, United States V. Clay 2:21-cr-00062-1, (2023.)

If the alleged victim were afraid of Naylor-Legg and what she could do to the alleged victim, that still is not enough for a jury to properly find that Mr. Clay coerced the alleged victim unless Mr. Clay took part in the actual coercing.

9      In Gauley Bridge, in this area, the defendant had all

10   the power.   In Gauley Bridge Larry Clay was the law.

11      Now, when they arrived, the defendant took C.H.   He

12   walked her over between his car and Kristen's on the side of

13   this dirt road.   He didn't bother to take off his uniform or

14   his belt or his handcuffs or his taser or his badge.   He

15   simply unzipped his pants and pushed C.H. down to her knees

16   to make her perform oral sex on him.

17      When he was finished with that, he pulled her up off

18   the ground, bent him over -- or bent her over the hood of

19   his car and forced himself on her.

Transcript of Trial Volume 1 at 41, lines 20-25, United States V. Clay 2:21-cr-00062-1,

(2023.)

```
10        And you will hear how he took Kristen and C.H. down to

11   this room, a room with a couch and some desks and a large

12   mural painted on the wall with the shield for the Gauley

13   Bridge Police Department.

14        And when he got down there, he again kept on his

15   uniform and his belt and his badge and his handcuffs and he

16   again forced himself upon C.H. up against a desk.
```

Transcript of Trial Volume 1 at 45, lines 10-16, United States V. Clay 2:21-cr-00062-1, (2023.)

In her opening statement, Ms. Herrald laid the foundation for her argument as to how Mr. Clay coerced the alleged victim into sexual activity with him.  She told the jury that Mr. Clay was wearing his law enforcement uniform during the alleged encounters, and because of his uniform, the alleged victim was coerced.  Ms. Herrald argued this even though she proffered no evidence that Mr. Clay ever intended to use his uniform as a means of coercing the alleged victim.

```
 7   Q.   Did you feel that you could say "no" during this

 8   encounter?

 9   A.   No.

10   Q.   Why not?

11   A.   Kristen threatened to kick me out on the streets and he

12   was Chief of Police.
```

Transcript of Trial Volume 1 at 107, lines 7-12, United States V. Clay 2:21-cr-00062-1, (2023.)

There was no testimony offered to the jury that Mr. Clay ever used his position as chief of police to coerce the alleged victim.  The alleged victim testified that Mr. Clay never said anything to her in regard to what he allegedly wanted from her.  Every word of testimony from the alleged victim about any means of coercion was directly from Naylor-Legg and not Mr. Clay.

```
16   Q.   Knowing what had happened at Cane Branch, why did you

17   agree to go with her that day.

18   A.   As I said, she gave me no other choice.  I wouldn't

19   have had a roof over my head and he was the Chief of Police.

20   Q.   Did you feel you had the option to say "no"?

21   A.   No.
```

Transcript of Trial Volume 1 at 109, lines 16-21, United States V. Clay 2:21-cr-00062-1, (2023.)

```
 2   Q.   If you had said "no" to the defendant, what did you

 3   think might happen?

 4   A.   I didn't know what he would do.

 5   Q.   Was there anything you thought might happen that was

 6   going through your head at the time?

 7   A.   He would hurt me.

 8   Q.   Why did you think that?

 9   A.   He's Chief of Police.  If he thinks he can get away

10   with this, who knows what he could have got away with.
```

Transcript of Trial Volume 1 at 110, lines 2-10, United States V. Clay 2:21-cr-00062-1, (2023.)

Under Ms. Herrald's line of reasoning, whenever a law enforcement officer is engaging in sexual activity, then by definition, he or she is using coercion, and it is, therefore, a federal crime.  Mr. Clay never threatened the alleged victim.  The alleged victim never testified that Mr. Clay threatened to kick her out of her home.  She never testified that Mr. Clay physically restrained her in any way.  She never testified Mr. Clay drove her to a location that she would have no means of escaping from.  Every one of those were things that the alleged victim testified that Naylor-Legg said or did.  Mr. Clay is not responsible for what Naylor-Legg said or did.  He is only responsible for his own words and actions. This was supposed to be a trial based on the crimes that the United States alleged Mr.

Clay committed.  However, testimony was allowed about what Naylor-Legg said and did without any proof at all that Mr. Clay was coercing the alleged victim.   The alleged victim never testified that Mr. Clay threatened to arrest her or even threatened her with any legal process to coerce her into sexual activity.  She did not testify that Mr. Clay caused her any serious injury to coerce her into sexual activity.  She never testified that Mr. Clay told her she had to engage in sexual activity with him because he was a law enforcement officer.

The testimony that she gave reflected what Ms. Herrald argued to the court and told the jury in her opening statement.  The only evidence that Ms. Herrald proffered to the jury that Mr. Clay coerced the alleged victim into sexual activity with him was that both times Mr. Clay allegedly met with the alleged victim, he was in his uniform.

```
23   Q.   What was he wearing when he got out of the car?

24   A.   His police uniform.

25   Q.   Do you know if he was on duty?
```

Transcript of Trial Volume 1 at 102, lines 23-25, United States V. Clay 2:21-cr-00062-1, (2023.)

17

```
1    A.    Yes.

2    Q.    How did you know that he was on duty?

3    A.    He was wearing his badge and his belt as well.

4    Q.    And you just mentioned the badge and the belt.  Do you

5    remember anything else about his uniform?

6    A.    Not that I can think of.
```

Transcript of Trial Volume 1 at 103, lines 1-6, United States V. Clay 2:21-cr-00062-1, (2023.)

The alleged victim testified that Mr. Clay was on duty while the alleged encounters happened.  According to the testimony given, Mr. Clay was wearing his uniform simply because he was working as a law enforcement officer at the time.  There was testimony that Mr. Clay worked two jobs in law enforcement; it is a safe assumption that Mr. Clay spent the majority of his time wearing his various uniforms.  That Mr. Clay was wearing his uniform during the alleged encounters cannot in and of itself be the only evidence that Mr. Clay coerced the alleged victim.  Because there was no evidence that Mr. Clay coerced the alleged victim, a reasonable jury could not have found that Mr. Clay committed coercion beyond a reasonable doubt.

**CONCLUSION**

For all the reasons listed above, the undersigned counsel believes that Mr. Clay has

met the high burden to prove that he did not have a fair trial because the jury was unduly

prejudiced against him and because his Constitutional rights were violated.  Therefore,

Mr. Clay respectfully requests that the Court GRANT Mr. Clay a new trial.

Very truly yours,


JOY LAW OFFICE
2701 Louisa Street
P.O. Box 411
Catlettsburg, KY 41129
Telephone: (606) 739-4569
Facsimile: (606) 739-0338
Cell: (859) 488-1214


___/s/ Sebastian M. Joy_____
Hon. Sebastian M. Joy
Counsel for Defendant Larry Allen Clay, Jr.
Kentucky Bar # 92583
West Virginia Bar # 10945
E-mail: sjoy@joylawoffice.com
Admitted in Kentucky & West Virginia

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**UNITED STATES OF AMERICA
vs.**                                        **Criminal No. 2:21-CR-00062-1**

**LARRY ALLEN CLAY, JR.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing **MOTION FOR EXTENSION**

**OF TIME TO FILE DRAFT PSR** has been electronically filed with the Clerk of Court this

date using the CM/ECF system and served upon opposing counsel as follows:

**VIA CM/ECF:**         Hon. Jenny Herrald, Esq. AUSA
                        Office of the United States Attorney
                        Southern Division of West Virgina
                        300 Virginia Street East, Room 4000
                        Charleston, WV 25301

**DATE:**               June 22, 2023

                                    Very truly yours,

                                    JOY LAW OFFICE
                                    2701 Louisa Street
                                    P.O. Box 411
                                    Catlettsburg, KY 41129
                                    Telephone: (606) 739-4569
                                    Facsimile: (606) 739-0338
                                    Cell: (859) 488-1214


                                    __ s/ Sebastian M. Joy_____
                                    Hon. Sebastian M. Joy
                                    Counsel for Defendant Larry Allen Clay Jr
                                    Kentucky Bar # 92583
                                    West Virginia Bar # 10945
                                    E-mail: sjoy@joylawoffice.com
                                    Admitted in Kentucky & West Virginia