IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL ACTION NO. 2:21-cr-00062-01

LARRY ALLEN CLAY, JR.

MEMORANDUM OPINION AND ORDER

Following a four-day jury trial, Defendant Larry Allen Clay, Jr., was found guilty on four counts involving the sex trafficking of a minor and via coercion, as well as obstruction of justice. *See* [ECF No. 317]. Now pending before the court is Mr. Clay's Motion for a New Trial [ECF No. 339], filed pursuant to Rule 33 of the Federal Rules of Criminal Procedure. For the reasons stated herein, the Motion is **DENIED**.

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Mr. Clay raises three distinct arguments in support of his Motion for a New Trial: (1) certain evidence was improperly admitted; (2) his right to a speedy trial was violated; and (3) insufficient evidence of coercion was introduced. [ECF No. 339]. I will address each argument in turn.

### a. Improperly Admitted Evidence

First, Mr. Clay argues that the United States should not have been permitted to introduce testimony by Chastity Niday, his previous sexual partner, that he instructed her that "if he ever asked her to get rid of her phone then she should get rid of it." [ECF No. 183, at 2]; *see* [ECF No. 339, at 45]. The entire factual predicate for this claim is flawed because that testimony was never introduced at trial.

As Mr. Clay notes, Ms. Niday's statement was the subject of a motion *in limine* in which he argued that her testimony lacked sufficient similarity to the charges against him and therefore constituted impermissible character evidence. [ECF No. 183 (citing Fed. R. Evid. 404(b))]. The court agreed with Mr. Clay and found the evidence inadmissible:

> Ms. Niday's testimony regarding the defendant's instruction that, quote, if he ever asks her to get rid of her phone, then she should get rid of it, unquote, the Court finds is inadmissible.
>
> I find this conduct is not closely related in time, pattern, or state of mind to the obstruction charges against the defendant. His instruction to Ms. Niday is very different from the alleged conduct toward [co-defendant] Ms. Naylor-Legg, and it was given proactively rather than to impede an on-going investigation.

[ECF No. 336, at 6:9–18]. The same motion *in limine* also addressed some other witness statements which the court did admit, but Mr. Clay does not appear to challenge those admissions in his Motion for a New Trial.[1]

---

[1] The court interprets the Motion to take issue only with the supposed introduction of the phone testimony, however, a sentence toward the end of this section refers to "the remaining parts of Mrs.

2

In accordance with the court's pretrial ruling, the United States did not elicit or otherwise introduce Ms. Niday's statement that the defendant asked her to get rid of her phone. Tellingly, Mr. Clay's Motion does not cite any portion of the trial transcripts—or anything else—suggesting this evidence ever came before the jury. *See* [ECF No. 339, at 4–5]. Indeed, the transcripts confirm that Ms. Niday's testimony never touched on the statement at issue. *See* [ECF No. 338, at 87:14–98:11]. Clearly, the non-presentation of objectionable evidence cannot provide grounds for a new trial.

---

Niday's testimony," and the rest of the discussion speaks only in general terms. [ECF No. 339, at 4–5]. To the extent that the defendant intended to challenge additional evidence, I will briefly address those issues now, largely by summarizing the bases for my prior rulings.

On the morning that trial began, the court addressed the defendant's Rule 404(b) motion *in limine*, [ECF No. 183], which sought to exclude three categories of evidence. Two categories involved possible testimony by Ms. Niday. As discussed above, the court determined that she could not testify to the defendant's alleged instruction about her phone. The other, broader category involved her sexual history with Mr. Clay. The United States had disclosed Ms. Niday's anticipated testimony that she and the defendant had sex in law enforcement facilities, that he kept his pants on during sex, that he paid for sex, that he arranged for her to have sex with other law enforcement officers, and that he expressed interest in having sex with her teenage sister. The court precluded the testimony about payment for sex, finding it unnecessary in light of the other evidence available to the Government. The court permitted the remaining testimony, which corroborated specific, identifying information that was relevant to essential elements of the charges. Much of the testimony did not involve "bad acts" targeted by Rule 404(b), let alone unduly prejudice the defendant. *United States v. Byers*, 649 F.3d 197, 210 (4th Cir. 2011).

Finally, although it is not "remaining parts of Mrs. Niday's testimony," I will also discuss the third category of evidence identified by the motion *in limine*: the victim's anticipated testimony that Mr. Clay supplied money to Ms. Naylor-Legg for the purpose of purchasing marijuana. [ECF No. 183]. The court found the evidence admissible, however, the victim's testimony at trial ultimately made no mention of marijuana or other controlled substances. *See* [ECF No. 336, at 106:17–107:6]. *See generally United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994) ("[E]vidence of uncharged conduct is not considered 'other crimes' evidence if it 'arose out of the same series of transactions as the charged offense, or if it is necessary to complete the story of the crime on trial.'" (quoting *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989)) (internal markings omitted)); *Byers*, 649 F.3d at 210 ("Generally speaking, 'bad acts' evidence, admissible under Rule 404, is not barred by Rule 403 where such evidence 'did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged.'" (quoting *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995))).

3

### b. Speedy Trial Act Violation

Next, Mr. Clay asserts violations of the Speedy Trial Act.[2] [ECF No. 339, at 5–7]. The Act generally requires that a criminal trial begin within 70 days from the filing of an information or indictment, or from the date the defendant appears before the court in which the charges against him are pending, whichever date occurs later. 18 U.S.C. § 3161(c). Certain delays are excluded from the 70-day count, such as those resulting from pretrial motions or the unavailability of an essential witness, or where the court finds that the "ends of justice" served by a continuance "outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h). Additionally, the speedy trial clock resets upon the return of a superseding indictment that contains a new charge or new defendant. *United States v. Lesczynski*, 86 F. App'x 551, 554 (4th Cir. 2004).

With five superseding indictments and numerous continuances, the proceedings against Mr. Clay have taken longer than most criminal prosecutions before this court; having awaited trial for over two years, his frustration is understandable. But in maintaining that his speedy trial clock expired prior to the commencement of his trial, Mr. Clay relies on mistaken characterizations of the law. The defendant previously raised similar arguments in a motion to dismiss, [ECF No.

---

[2] Given that this Motion seeks a new trial, the requested relief would only extend the proceedings, thereby exacerbating rather than remedying any violation of the Speedy Trial Act. The appropriate remedy for such a violation is dismissal of the indictment, and the defendant's motion for such relief was previously denied. *See* [ECF No. 230]. Nevertheless, to the extent the defendant raises new arguments based upon more recent events, the court will discuss these issues to determine the propriety and availability of any relief.

4

227], which the court denied in a Memorandum Opinion and Order entered January 3, 2023, [ECF No. 230]. In that Opinion, the court outlined the lengthy procedural history of this case. *Id.* at 1–4. Rather than restating that entire history here, I will focus on only the most relevant facts, and I refer readers to my prior Opinion for more details.

In the instant Motion, Mr. Clay's argument revolves around the Fourth Superseding Indictment, on which he was arraigned on October 14, 2022. [ECF Nos. 209, 211]. Prior to that Indictment, the court granted two motions by the defendant to continue trial due to witness unavailability. [ECF Nos. 187, 202]. After the second continuance, trial was set for December 13, 2022, and the court found the time between the previous trial date and the new date (August 23 to December 13, 2022) excludable under the Speedy Trial Act. [ECF No. 202]. The crux of Mr. Clay's argument is that after the Fourth Superseding Indictment restarted the 70-day clock, "this Court did not choose to again find that the time between August 23, 2022, and December 13, 2022, was excludable." [ECF No. 339, at 7]. Without citing to any authority, the defendant contends "the time that was previously excluded can no longer be excluded due to the clock resetting." *Id.* The court rejected this argument in its prior Opinion:

> Notwithstanding that reset, previously excluded time remains excluded from the new 70-day count. . . . The court's order excluding time from August 23 through December 13, 2022, as to the charges in the third superseding indictment, applies with equal force to the charges in the fourth and fifth superseding indictments.

5

> After the clock reset, it did not begin to count down until at least December 13, 2022 . . . . Established law forecloses Defendant's argument that the court was required to specifically state that it was re-excluding the time that had previously been excluded upon Defendant's motion.[3]

[ECF No. 230, at 5–6]; *see United States v. Fabian*, 798 F. Supp. 2d 647, 672–73 (D. Md. 2011) (rejecting defendant's argument that "an existing court order excluding time under the Act becomes ineffective upon the filing of a superseding indictment"); *United States v. Gonzales*, 897 F.2d 1312, 1316 (5th Cir. 1990) ("[A]ll speedy-trial exclusions apply as if no superseding indictment had been returned."). Because the prior exclusion remained in effect, the 70-day clock never expired, and no violation of the Speedy Trial Act occurred.

Although not expressly argued, Defendant's recitation of the facts includes at least two additional contentions that he has previously attempted to raise as bases for speedy trial violations. I will briefly address those now.

First, Mr. Clay claims that the Fifth Superseding Indictment "did not have any substantive changes in the charges." [ECF No. 339, at 2]. In his earlier motion to dismiss, Defendant argued that the Fifth Superseding Indictment did not reset the

---

[3] In that motion, the defendant stated that a continuance was "in the best interests of justice" because his expert witness had a conflict with the trial date in place at that time. [ECF No. 196]. It is difficult to see how a superseding indictment could render available a previously unavailable witness. Thus, if excluding that delay from the speedy trial clock was "in the best interests of justice" when the continuance was granted, the exclusion serves those interests no less after the return of the new indictment.

In the instant motion, Defendant deems it "nonsensical" that "the speedy trial clock can be reset in favor of the United States and not equally apply to Mr. Clay." [ECF No. 339, at 7]. Absent from this characterization is an acknowledgement that Mr. Clay is the one who sought the exclusion in the first place, and the one who would have been prejudiced had he needed to expend resources renewing his prior requests each time the speedy trial clock reset.

clock because the only new charge was "the same as, or required to be joined with, an offense charged in the [prior] indictment." [ECF No. 230, at 6–7 (citing *United States v. Novak*, 715 F.2d 810, 819 (3d Cir. 1983))]. The court rejected this argument, finding that the new charge "require[d] proof of elements distinct from or in addition to those necessary to prove the crimes" charged in the prior indictment. *Id.* at 7 (quoting *United States v. Gaskin*, 364 F.3d 438, 453 (2d Cir. 2004)). Given that the Fifth Superseding Indictment contained a new charge, Mr. Clay's November 14, 2022, arraignment on that charge served to reset the 70-day clock. Pursuant to the Arraignment Order, trial was reset for January 17, 2023. [ECF No. 217].

Apparently ignoring the court's ruling on the Fifth Superseding Indictment, the defendant insists on describing the Arraignment Order as a "Sua Sponte continu[ance]" ordered without issuing the findings required for exclusion under the Speedy Trial Act. [ECF No. 339, at 2 (citing 18 U.S.C. § 3161(h)(7))]. Defendant correctly notes that a period of delay resulting from a continuance is excluded "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," and such findings are set forth "in the record of the case, either orally or in writing." 18 U.S.C. § 3161(h)(7)(A). Such finding is required, however, only when the delay does not result from one of the enumerated circumstances in which exclusion occurs automatically. *Compare id.* (requiring specific findings to exclude continuance-related delay), *with, e.g., id.* § 3161(h)(1)–(6)

7

(listing circumstances that trigger automatic exclusion). Moreover, the Act distinguishes between excluding a delay from the speedy trial clock and restarting the clock altogether. Accordingly, the Arraignment Order resetting Mr. Clay's trial date [ECF No. 217] did not require a specific finding on the record, and no speedy trial violation occurred in this respect.

Finally, Defendant identifies another continuance which he describes as "sua sponte" and "without issuing a finding, as is required." [ECF No. 339, at 2]. Unlike Mr. Clay's other speedy trial arguments, this point has some merit. It does appear that the court continued trial from March 21st to April 25th without recording the findings required to validly exclude the time between those two dates. [ECF No. 243]. Nevertheless, this oversight is ultimately immaterial; even without excluding that time, the defendant's speedy trial clock never expired. As just discussed, the clock reset on November 14, 2022, upon Mr. Clay's arraignment on the Fifth Superseding Indictment. The time between August 23 and December 13, 2022, was properly found excluded, as was the time between January 17 and March 21, 2023. *See* discussion *supra*; [ECF No. 235 (granting Defendant's motion to continue trial to March 21, 2023)]. Given those two exclusions alone, the defendant's 70-day clock did not expire before his trial began on April 25, 2023.[4]

---

[4] 35 days elapsed between December 13, 2022, and January 17, 2023, and another 35 days elapsed between March 21 and April 25, 2023. Accordingly, Mr. Clay's trial began within 70 days, at most, from the date of his arraignment on the controlling indictment.

Several other events within these proceedings may have triggered exclusions; although not central to my ruling, they warrant cursory mention here. The Speedy Trial Act provides for automatic exclusion of "any delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," as well as any "delay

### c. Insufficient Evidence of Coercion

The defendant was found guilty of two different types of sex trafficking: sex trafficking of a minor and sex trafficking by coercion. With respect to the second type,

---

reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(1).

On April 6, 2023, the United States filed a motion to continue Mr. Clay's trial pending resolution of his co-defendant's motion for new counsel and possible withdrawal of her guilty plea. [ECF No. 252]. The court set a hearing at which both motions were disposed of on April 14, 2023. [ECF No. 261]. On April 19, 2023, the United States filed a Notice of Potential Conflict of Interest and Motion for Hearing. [ECF No. 274]. The court promptly directed defense counsel to respond to the Notice. [ECF No. 276]. When defense counsel failed to fully comply with that directive, the court granted the motion for hearing, which took place on April 24, 2023. [ECF Nos. 281, 287]. Based on this pretrial activity, the time periods between April 6th and April 14th and between April 19th and April 24th were excluded from the 70-day speedy trial clock.

The court also takes note of the argument, raised by the United States throughout its filings, that Mr. Clay's speedy trial clock tolled on July 15, 2022, when he filed a Motion Under Federal Rule of Evidence 412 [ECF No. 200], and remained tolled until that motion was resolved at trial. *See* [ECF No. 252, at 5; ECF No. 229, at 6–7; ECF No. 340, at 3]. A Rule 412 motion expressly requires a hearing before the court may admit evidence under the rule. Rather than holding a separate hearing at a prior date, the court treated the defendant's Rule 412 motion like a motion *in limine*, which this court typically takes up on the morning of trial, as it did here. Although the court always intended to reserve ruling on the Rule 412 motion for trial, the Government validly maintains that the motion served to toll the clock from when it was filed on July 15, 2022—at which time trial had been set for August 23, 2022—to when it was resolved, at trial, on April 25, 2023. *See Henderson v. United States*, 476 U.S. 321, 326, 329 (1986) (holding that "when a pretrial motion requires a hearing," the Speedy Trial Act automatically excludes "all time between the filing of and the hearing on a motion whether that hearing was prompt or not"); *United States v. Riley*, 991 F.2d 120, 123–24 (4th Cir. 1993) (holding that a pretrial motion deferred until after trial does not "los[e] its character as a 'pretrial' motion for purposes of § 3161," and all time from the filing of the motion until its disposition is properly excluded, without any requirement that the time "be justified as reasonable"). Thus, Mr. Clay's speedy trial clock did not—and could not have—expired before the Rule 412 motion was resolved at trial.

Indeed, the Rule 412 motion appears entirely dispositive of any possible contention that the Speedy Trial Act was violated in this case. But some courts express concern over such a broad rule of exclusion, particularly where, as here, the motion did not cause any delay. *E.g., United States v. Gambino*, 59 F.3d 353, 359 (2d Cir. 1995) ("The motion has in effect been tabled. Yet the government would have us rule that the fact of a pending motion cancels the time requirements of the Speedy Trial Act. Obviously were we to so hold, perpetual postponements would become routine in every case where a defendant seeks an evidentiary hearing."). Emphasizing the word "resulting" in the statute, these courts hold "delay that coincides with the motion's pendency . . . under the express terms of the Speedy Trial Act may be excluded 'only when it in some way results from the pendency of the motion.'" *Id.* (quoting *United States v. Clymer*, 25 F.3d 824, 830 (9th Cir. 1994)). Relative to other jurisdictions, the Fourth Circuit tends to favor broader exclusion, *see Gambino*, 59 F.3d at 359 (diverging from the Fourth Circuit's ruling in *Riley*, 991 F.2d 120), but the court has yet to consider the issue in the context of a Rule 412 motion. In this case, I need not determine whether the defendant's Rule 412 motion served to broadly exclude all the time from its filing through the trial; as discussed above, the defendant's speedy trial arguments fail for additional reasons rooted in well-established law.

9

Mr. Clay claims that "no evidence of coercion was actually introduced" and, therefore, "a reasonable jury could not have found that Mr. Clay committed coercion beyond a reasonable doubt." [ECF No. 339, at 11, 18]. When a motion for new trial attacks the weight of the evidence, the trial court has broad authority under which it may assess witness credibility and weigh conflicting evidence. *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985). But because these functions lie within the purview of the factfinder, a jury verdict should not be disturbed unless "the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." *Id.* at 1485–86 ("[T]he trial court's discretion should be exercised sparingly.").

In seeking a new trial on this ground, Defendant's contention is two-fold: first, that any evidence of coercion involved only his co-defendant, Ms. Naylor-Legg, and second, that the remaining evidence against Mr. Clay is wholly insufficient to demonstrate coercion. As the ensuing discussion will show, these arguments are premised upon misunderstandings of both the law and the facts.

I first address the defendant's mistake of law. In his Motion, Mr. Clay asserts that he "is not responsible for what Naylor-Legg said or did. He is only responsible for his own words and actions." [ECF No. 339, at 16]; *see also id.* at 12 ("If the alleged victim were afraid of Naylor-Legg and what she could do to the alleged victim, that still is not enough for a jury to properly find that Mr. Clay coerced the alleged victim unless Mr. Clay took part in the actual coercing."). This interpretation of the law contradicts the plain text of the statute under which Mr. Clay was convicted, 18

10

U.S.C. § 1591.[5] To be guilty of violating § 1591(a), a defendant need not have committed coercive acts himself. Rather, he must have acted "knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the [victim] to engage in a commercial sex act." 18 U.S.C. § 1591(a)(2); *see* [ECF No. 340, at 4 ("[T]he passive language of the statute—that coercion *would be used*—makes clear that coercion applied by a third-party is sufficient to prove coercion if the defendant knew or recklessly disregarded that third-party's use of coercion.")]. Section 1591 defines "coercion" as "(A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process." 18 U.S.C. § 1591(e)(2). The statute then defines "serious harm" to mean "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." *Id.* § 1591(e)(5).

---

[5] Moreover, the very purpose of a criminal conspiracy charge is to hold individuals responsible for their co-conspirators' illegal acts. Presumably, then, this portion of the defendant's Motion does not attack his conviction for conspiracy to engage in sex trafficking via coercion, as charged in Count One of the Fifth Superseding Indictment. Rather, the Motion addresses only his conviction for sex trafficking of a minor via coercion, as charged in Count Two.

As even the defendant acknowledges, the United States did introduce evidence that his co-defendant employed multiple means of coercion to sex traffic the victim. [ECF No. 339, at 15 ("Every word of testimony from the alleged victim about any means of coercion was directly from Naylor-Legg and not Mr. Clay."), 16 (discussing the victim's testimony that Ms. Naylor-Legg "threatened to kick her out of her home" and "drove her to a location that she would have no means of escaping from")]. The Government also presented evidence from which a reasonable jury could conclude that Mr. Clay was aware of Ms. Naylor-Legg's coercive conduct toward the victim or, at a minimum, that he recklessly disregarded her use of coercive means. *See, e.g.*, [ECF No. 333, at 141:17–143:24 (Ms. Naylor-Legg testifying that Mr. Clay knew about her family's money problems, that he offered to help with her money problems only after she rejected his initial request to have sex with the victim, that he was aware of the victim's age and her dependency upon her stepparents, and that the victim was present for his initial request and she expressly told him "no")].

But even without considering Ms. Naylor-Legg's conduct, the evidence presented against Mr. Clay supports the jury's finding that the coercion element was met. Having never expressly threatened the victim, the defendant claims the "only evidence" of his alleged coercion was his uniform and "[t]hat Mr. Clay was wearing a police uniform during the alleged encounters with the alleged victim cannot properly be the only evidence for a proper and just guilty verdict." [ECF No. 339, at 12]. Whether a police uniform, alone, can support a finding of coercion, I need not make

12

that determination, because the defendant's attempt to recast the evidence does not stand up to the barest of scrutiny.

As an initial matter, Defendant downplays the coercive capacity of a police uniform. At trial, multiple witnesses testified about the "use of force continuum," which "serves as an outline with how law enforcement should or should not react to a potential threat when they're on a call." [ECF No. 333, at 6:1–12]; see [ECF No. 338, at 100:3–21]. Special Agent Brian Morris explained that "officer presence"—the first level of the continuum—is treated as a display of force "[b]ecause you're in a position of authority." [ECF No. 333, at 6:13–21]. Detective James Pack confirmed Agent Morris's testimony that the first two levels involve mere presence and verbal instruction, before the continuum ever escalates to any physical force. [ECF No. 338, at 100:3–21].

As for the specifics in this case, both the victim and Ms. Naylor-Legg testified that the belt on Mr. Clay's uniform had handcuffs and multiple weapons. [ECF No. 336, at 103:8 ("Handcuffs, taser, pepper spray."); ECF No. 333, at 148:13–14 ("He had his gun belt on. It had a gun on it, pepper spray, handcuffs.")]. The jury heard testimony that the defendant's badge indicated his position as the Chief of Police for Gauley Bridge, the town where the victim grew up. [ECF No. 336, at 103:3]. The victim testified to feeling she could not say "no" and worrying "[h]e would hurt [her]" because "[h]e's Chief of Police. If he thinks he can get away with this, who knows what he could have got away with." *Id.* at 107:7–12, 110:5–10.

Beyond Mr. Clay's uniform and status as Chief, additional evidence of coercion was introduced at trial. For example, Ms. Naylor-Legg testified that Mr. Clay selected the private locations for each incident of sex trafficking. [ECF No. 333, at 128:9–10]. In the defendant's own words, at least one of those locations provided "no means of escaping." [ECF No. 339, at 16]. The other location was a restricted-access law enforcement facility, with prominent signage indicating "Gauley Bridge Police." *See* [ECF No. 336, at 190:10–193:13]. The jury also heard testimony that during the second encounter, Mr. Clay ejaculated inside the victim over her express wish that he not. *Id.* at 115:10–21. Even if the victim had validly consented to having sex with the defendant, he physically overrode a clear limitation on the scope of her consent.[6] *See generally Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 629 (W.D. Va. 2015) (explaining that a person may consent to "some activities" without consenting to other, related activities (citing *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003))). Though Mr. Clay is not alleged to have been particularly forceful, the victim testified that he held her "up against the hood of the car," "pushed [her] up against the desk," and "had his hand on the back of [her] head [to] . . . ma[k]e sure [she] didn't move." [ECF No. 336, at 105:3–106:4, 113:13–114:20, 104:2–6].

---

[6] Although, on its own, this act arguably does not constitute a crime, *cf.* Note, McKenney Cornett, *Taking the Lead: A Strategic Analysis of Stealthing and the Best Route for Potential Civil Plaintiffs to Recover*, 27 Wm. & Mary J. Race, Gender & Soc. Just. 931, 932–33 (2021) ("[T]here has yet to be a criminal or civil case concerning nonconsensual condom removal brought in the United States, and the legislature has not proactively criminalized the conduct."), a reasonable jury could infer coercion from the occurrence of a sexual act to which the victim had explicitly withheld consent.

14

In sum, jurors heard the victim testify "about the various harms she thought would result if she refused to comply with Naylor-Legg and defendant's plan, and this included her concerns about what a person with defendant's authority and power could do to harm her." [ECF No. 340, at 5]. They also heard about various circumstances that suggest her fears were reasonable. *See* discussion *supra*. From this evidence, a reasonable jury could conclude that Mr. Clay created, or recklessly disregarded the existence of, a "scheme, plan, or pattern intended to cause [the victim] to believe that failure to perform an act would result in . . . harm . . . that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." 18 U.S.C. § 1591(e). Accordingly, the evidence presented at trial was sufficient to support Mr. Clay's conviction for sex trafficking via coercion, no injustice will result from entering judgment upon the verdict, and a new trial is unwarranted. *See Arrington*, 757 F.2d at 1485.

For the foregoing reasons, Mr. Clay's Motion for a New Trial [ECF No. 339] is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: July 6, 2023

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

15