# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON DIVISION

**UNITED STATES OF AMERICA**

**v.**                                              **Case No. 2:21-cr-00062-1**

**LARRY ALLEN CLAY, JR.**

## SENTENCING MEMORANDUM

Defendant, LARRY ALLEN CLAY, JR., submits this Sentencing Memorandum evaluating each one of the various factors under 18 U.S.C. § 3553(a) for the Court's consideration at the Sentencing hearing scheduled for September 28, 2023, at 1.30 p.m., in Charleston, WV.

The court in determining the particular sentence to be imposed and the need for a variance, shall consider the factors found at 18 U.S.C. § 3553(a). These factors include; the nature and circumstance of the offense and the history and characteristics of the defendant, the need to reflect the seriousness of the offense, to promote respect for the law and provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed vocational or educational training, medical care, or other correctional treatment in the most effective manner.

The defendant respectfully requests the court to sentence him to a minimum term of incarceration of 15 years.

## **BACKGROUND – NATURE & CIRCUMSTANCES OF THE OFFENSE**

On March 24, 2021, the Grand Jury for the United States District Court for the Southern District of West Virginia returned a multi count indictment against LARRY ALLEN CLA,Y, JR. and his co-defendant, charging the defendants with Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1591(a)(1). On November 1, 2022, a Federal Grand Jury returned a four count, Fifth Superseding indictment against Mr. Clay, charging him with Conspiracy to Engage in Sex trafficking of a minor and via coercion, Sex trafficking of a minor and via coercion, and three counts of Obstruction of Justice.

The Defendant and counsel appeared for a Jury trial on the dates of April 25, 2023 and the jury trial concluded on April 28, 2023, with the Jury returning a verdict of Guilty on all five counts. The charges against his co-defendant, who had previously pled guilty to one count of the indictment was adjudicated and the co-defendant was sentenced to 108 months.

The defendant is accused of having sex with a minor step daughter of his co-defendant on two occasions and also attempting to obstruct justice on three occasions.

## HISTORY AND CHARACTERISTICS OF THE DEFENDANT

LARRY ALLEN CLA,Y, JR., was born to the marital relationship of Larry Allen Clay and Lodema Clay. He has three siblings, Terry Clay, Crystal Clay Bishop, and Monica Gibson. The defendant grew up in a divorced family, but still has regular contact with all of his family. It should be noted that both of his sisters and his elderly mother appeared during the entirety of the four day trial.

Mr. Clay has one child, Christopher Clay, with whom he has regular contact. Mr. Clay is very close to his family.

Mr. Clay suffers from various ailments and is in poor health. He currently is suffering from heart, lunch and spinal issues. He is currently prescribed a rescue inhaler for his asthma. During his time of incarceration at the Carter County Detention Center, Mr. Clay has been diagnosed with Tachcardia, which has caused him to have a racing heartbeat. He also suffers from a bad heart valve and fluid around his heart.

The defendant was a licensed HVAC tech for close to twenty years. He owned his own business, Clay's Heating and Air Conditioning. At a later part of his life, the defendant left this occupation to pursue his lifelong dream of becoming a police officer. He went the West Virginia Police Academy and graduated and was sworn in as a law enforcement officer. He joined the Fayette County Sheriffs Department in June of 2012, and worked there until September, 2020. Mr. Clay was also the Police Chief for the Gauley Bridge Police Department from 2019 until 2020.

As can be evidenced by the letters written by Amber Clay, Crystal Bishop, Drema Williams, Earl Walton, Gregg A. Childers, James Matheny, Michael Bishop, Monica Bishop, Shirley Walton, Larry Allen Clay, Sr., Lodema Clay and attached as Exhibits 1 - 11, Mr. Clay was a good man, who went astray on a few occasions.

## **THE DEFENDANTS SENTENCE**

Mr. Clay, would be the classic person that needs to be punished, deterred, and rehabilitated, not convicted, warehoused and forgotten. The need for the sentence to promote respect for the law and to provide just punishment can be attained by the Court by granting a downward variance

and sentencing Mr. Clay, to a minimum term of incarceration of fifteen years.

As you can see in the PSI, Mr. Clay has no criminal history. He has never even received a speeding ticket. Furthermore, he does not use drugs. He has either been fully employed working two jobs his entire life, but in his retirement age, will lose everything and most importantly his freedom.

Even people like Mr. Clay, need help when they fall to the ground. Instead of putting him in prison and warehousing him, Mr. Clay, is someone who can be helped, and will more than likely, never repeat this crime again. This indictment has already changed his life. If the United States Department of Justice intends to make changes to fix our burgeoning prison problem, we need a place to start and someone to start this with, and Mr. Clay, is probably the best candidate to do so. In the alternative if the Court is determined to send the defendant to prison, we would respectfully request the court to offer a term of imprisonment that is at the bottom end of the mandatory minimum sentence.

## DEFENDANTS REMAINING OBJECTIONS

¶ 36. There is no evidence in the record that a smart phone was used to facilitate this transaction. Thus the 2 point enhancement should not apply.

¶ 41. Thus, the Adjusted Offense Level must be 36.

¶ 54. Thus, with the Grouping, it should be 37.

¶ 55. We do not believe USSG § 4B1.5(b) applies in this situation and we also believe that with the five points added, it should be 42. Or it should be a 37.

¶ 80. With a Total offense level of 38 and a criminal history of I, the guideline range is from 235-293.

## DEFENDANTS JSIN DATA COMPARISON – FEDERAL DEFENDANTS IN SELECTED CELL

During the last five fiscal years (FY2018-2022), there were 59 defendants whose primary guideline was §2G1.3, with a Final Offense Level of 43 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 59 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 315 month(s) and the median length of imprisonment imposed was 300 month(s). For all 59

defendants in the cell, the average sentence imposed was 315 month(s) and the median sentence imposed was 300 month(s).

The sentencing data provided does not reflect the Commission's recommendation regarding the appropriate sentence to be imposed or represent the Commission's official position on any issue or case. Nor does the information provided reflect the Commission's position regarding the weight to be given, if any, to the above sentencing information in a court's determination of the appropriate sentence to be imposed.

If the court does consider the above sentencing information as part of its consideration of the factors in 18 U.S.C. § 3553(a) in imposing sentence, it should do so only after considering the properly calculated guideline range and any applicable departures provided for in the Guidelines Manual.

### Sentence Imposed Relative to the Guideline Range for Defendants in Selected Cell
Fiscal Year 2018-2022



- Within Range: 17%
- Downward Departure or Variance: 73%
- §5K1.1 Substantial Assistance: 11%

**Note:** The figure includes the 66 defendants reported to the Commission whose primary guideline was §2G1.3, with a Final Offense Level of 43 and a Criminal History Category of I, including defendants who received a §5K1.1 substantial assistance departure. Cases missing information necessary to complete the analysis were excluded from this figure. Defendants who received a §5K1.1 substantial assistance departure are included in this analysis but are excluded from other analyses below. As such, the number of defendants included in this analysis may exceed the number of defendants in other analyses. Total percentages displayed in the figure may not sum to 100% due to rounding.

### Sentence Type for Defendants in Selected Cell (after excluding §5K1.1)
Fiscal Year 2018-2022

- Defendants Receiving Imprisonment (In Whole or In Part): 100%
- Defendants Receiving Probation or Fine Only

**Note:** The figure includes the 59 defendants reported to the Commission whose primary guideline was §2G1.3, with a Final Offense Level of 43 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. Cases missing information necessary to complete the analysis were excluded from this figure. Total percentages displayed in the figure may not sum to 100% due to rounding.

The *Defendants Receiving Imprisonment* category includes defendants sentenced to a term of imprisonment (in whole or in part) and who received a commitment to the Bureau of Prisons. This category includes (1) defendants sentenced to a term of imprisonment only, with no additional conditions of community confinement, home detention or intermittent confinement (Prison Only) and (2) defendants sentenced to imprisonment and conditions of alternative confinement as defined in USSG §5C1.1 (Prison and Alternatives). This category includes, but is not limited to, Zone A, Zone B, or Zone C cases receiving prison with additional conditions of a term of community confinement, home detention, or intermittent confinement.

The *Defendants Receiving Probation* category includes defendants sentenced to a term of probation with or without a condition of community confinement, intermittent confinement, and home detention (Probation Only and Probation and Alternatives). This category also includes defendants who received no prison, no probation, and no time of alternative confinement as defined in USSG §5C1.1, but instead who received a fine and/or a special assessment (Fine Only).

### Average and Median Sentence Length and Length of Imprisonment for Defendants in Selected Cell Who Received a Sentence of Imprisonment (excluding §5K1.1)
Fiscal Year 2018-2022



- Average Length of Imprisonment: 315
- Median Length of Imprisonment: 300
- Average Sentence Length: 315
- Median Sentence Length: 300

**Note:** The figure includes the 59 defendants reported to the Commission whose primary guideline was §2G1.3, with a Final Offense Level of 43 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. Cases missing information necessary to complete the analysis were excluded from this figure.

*Average and Median Length of Imprisonment* reports the average and median term of imprisonment imposed in months for the 59 cases in which a term of imprisonment was imposed in whole or in part. Probation sentences are excluded. Any portion of a sentence that is an alternative confinement as described in USSG §5C1.1 is also excluded.

*Average and Median Sentence Length* reports the average and median term of imprisonment imposed in months for all 59 cases. Probation sentences are included as zero months. Any portion of a sentence that is an alternative confinement as described in USSG §5C1.1 is also included.

Cases in which a sentence is imposed, but where the length is indeterminable, are excluded. When sentences are expressed as "time served" on the J&C, Commission staff uses the dates in federal custody to determine the length of time served when an defendant has been in custody the entire time. If the defendant has been in and out of custody, or the start date is unclear/missing, then the Commission assigns a value of one day as a minimal time served amount for these cases. In cases where the court imposes a sentence of life imprisonment, sentences are reported as 470 months, a length consistent with the average life expectancy of federal criminal defendants given the average age of federal defendants. Sentences of greater than 470 months are also reported as 470 months.

WHEREFORE, we would respectfully submit that the court grant the Defendant a downward variance and sentence him to a term below the guidelines, which is no more than necessary to promote respect for the law, yet at the same time be a deterrent for future criminal behavior, by sentencing him to a term of fifteen years.

Respectfully submitted this 20th day of September, 2023.

Very truly yours,

JOY LAW OFFICE
2701 Louisa Street
P.O. Box 411
Catlettsburg, KY 41129
Telephone: (606) 739-4569
Facsimile: (606) 739-0338
Cell: (859) 488-1214


/s/ Sebastian M. Joy_____
Hon. Sebastian M. Joy
Counsel for Defendant Larry A. Clay, Jr.
Kentucky Bar # 92583
West Virginia Bar # 10945
E-mail: sjoy@joylawoffice.com
Admitted in Kentucky & West Virginia

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**UNITED STATES OF AMERICA**
vs.                                            Criminal No. 2:21-CR-00062-1

**LARRY ALLEN CLAY, JR.**

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **SENTENCING MEMORANDUM and EXHIBITS 1-11** has been electronically filed with the Clerk of Court this date using the CM/ECF system and served upon opposing counsel as follows:

**VIA CM/ECF:**   Hon. Jenny Herrald, Esq. AUSA
Office of the United States Attorney
Southern Division of West Virginia
300 Virginia Street East, Room 4000
Charleston, WV 25301

**DATE:**   September 20, 2023

JOY LAW OFFICE

2701 Louisa Street
P.O. Box 411
Catlettsburg, KY 41129
Telephone: (606) 739-4569
Facsimile: (606) 739-0338
Cell: (859) 488-1214

/s/ Sebastian M. Joy
Hon. Sebastian M. Joy
Counsel for Defendant Larry A. Clay, Jr.
Kentucky Bar # 92583
West Virginia Bar # 10945

E-mail: sjoy@joylawoffice.com
Admitted in Kentucky & West Virginia