IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 2:21-00062

LARRY ALLEN CLAY, JR.

### SENTENCING MEMORANDUM OF THE UNITED STATES

Based on the facts set forth in the Presentence Investigation Report ("PSR") and as more fully discussed below, the United States requests that this Court sentence defendant to life in prison on Counts 1 and 2, to run concurrent to each other, and to 10 years in prison on Counts 3 and 4, to run concurrent to each other and consecutive to the sentences for Counts 1 and 2, resulting in a total sentence of life plus 10 years.

A. **Introduction**

This case involves one of the most egregious crimes that can be committed – a police chief, sworn to protect the public and enforce the law, using his position of power to coerce a minor to engage in commercial sex against her will. As if this were not a serious enough offense, defendant went further and struck at the very core of the justice system he was meant to uphold by attempting to obstruct justice and cover up his crime. Defendant viewed himself as untouchable because of his power and authority. The sentence in this case should send a strong message to him and others like him: it does not matter who you are or what position you may hold — no one is above the law.

B. **Objections to the Guideline Calculation in the PSR**

Several objections to the Guideline calculation in the PSR are remaining and are addressed separately herein.

1. *Government Objection – Application of USSG § 3A1.1(b)(1)*

The United States submits that the vulnerable victim enhancement under § 3A1.1(b)(1) should apply in this case. The PSR does not include the enhancement, relying upon Application Note 2 of § 3A1.1. That comment indicates that the enhancement should not be applied "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline." It specifically uses age-related factors as an example of a factor that is frequently already included in the underlying calculation, but it notes that the enhancement would still apply if based on other additional factors unrelated to age. For the reasons below, the undue influence provision under § 2G1.3(b)(2) does not preclude the application of the vulnerable victim enhancement in this case.

When assessing double-counting, the fact that two guidelines serve different goals is relevant to determine if the application of both is impermissible. *See United States v. Dowell,* 771 F.3d 162, 170-71 (4th Cir. 2014). The enhancements at issue here address two different issues – undue influence involves asserting a notable degree of pressure upon a victim to cause them to submit to the offense (and thus looks to the conduct of the defendant) while the vulnerable victim enhancement looks to the characteristics of the victim that make them particularly susceptible to being victimized. A defendant can assert undue influence upon a victim who is not unusually vulnerable, such as by using his position as chief of police to victimize someone who was otherwise not particularly susceptible to criminal conduct. A defendant can also take advantage of a particularly vulnerable victim (for example, a person who is vulnerable to fraud due to a cognitive disability) without exerting any specific undue influence over the victim that undermines the voluntariness of the victim's behavior. Accordingly, these two enhancements are not inherently duplicative. *See, e.g., United States v. Willoughby*, 742 F.3d 229, 241 (6th Cir. 2014) (affirming application of both undue influence and vulnerable victim enhancements in a sex trafficking case).

The Sentencing Commission also clearly knows how to identify situations where the Chapter Two guidelines preclude the application of the vulnerable victim enhancement. For example, the comments to §§ 2G2.1 and 2G2.2 both explicitly state that the vulnerable victim enhancement is inapplicable if certain enhancements within those sections apply.

Most importantly, however, is the fact that the two enhancements are applicable based upon different facts that apply only to one of the two enhancements. The undue influence enhancement can apply based upon the age difference alone or in combination with the show of force inherent in defendant being a police chief. The fact that defendant was a police officer, however, was not a characteristic of the victim that made her unusually susceptible. And the vulnerable victim enhancement is applicable based upon factors that are unrelated to the factors that demonstrate defendant's exercising of undue influence upon her, namely his awareness of her challenging family situation and her financial difficulties. That she was in a precarious financial situation and vulnerable to the demands of her stepmother was not a part of defendant asserting any undue influence upon her; those were instead characteristics of the victim that made her uniquely vulnerable and that he chose to exploit in committing his crime.

These two enhancements serve different purposes, punish different conduct (assertions of influence by the defendant versus the defendant exploiting characteristics that made the victim particularly vulnerable), and are based upon different sets of factors. Accordingly, the vulnerable victim enhancement is applicable and appropriately applied in addition to the enhancement for undue influence.

2. *Defendant Objection – Application of USSG § 2G1.3(b)(3)*

As set forth in the Addendum to the PSR, evidence in the case indicated that defendant communicated via text or other interactive cell phone messaging application with Kristen Naylor-

Legg to facilitate this offense, specifically to coerce the minor victim to engage in criminal sexual conduct. Defendant's cell phone was a smart phone and thus characterized as a "computer" for purposes of § 2G1.3. This enhancement is properly applied.

    3.   *Defendant Objection – Application of USSG § 4B1.5(b)*

Section 4B1.5 sets forth specific requirements in order to apply. First, the Court must determine whether the offense of conviction is a covered sex crime. A "covered sex crime" is defined in Application Note 2 to include a conviction under 18 U.S.C. § 1591 regarding a minor. Accordingly, defendant's offense of conviction is a covered sex crime.

The second step of the analysis is to determine if a defendant "engaged in a pattern of activity involving prohibited sexual conduct." Prohibited sexual conduct, in relevant part, is defined in Application Note 4(A) as "any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B)." A pattern of activity requires that a defendant, on at least two "separate occasions," engaged in prohibited sexual conduct with a minor. An occasion is considered for purposes of § 4B1.5(b) regardless of whether it resulted in a conviction or occurred during the course of the offense of conviction. Application Note 4(B).

Violations of § 1591 are included in the offenses enumerated in 18 U.S.C. § 2426(b)(1)(A), and thus such violations constitute prohibited sexual conduct. The question then turns to whether such conduct occurred on at least two "separate occasions." The evidence at trial indicates that defendant engaged in coerced commercial sexual activity with a minor on two separate occasions on two different dates in two different locations.

To the extent that defendant may argue that on one of the two occasions he, according to testimony at trial, reneged on his agreement to pay Kristen Naylor-Legg for the coerced sexual activity, that conduct still constitutes "prohibited sexual conduct" for purposes of the enhancement.

Offenses under Chapter 109A are included in the offenses identified in § 2426(b)(1)(A) and therefore constitute "prohibited sexual conduct." One offense under that chapter, 18 U.S.C. § 2242, makes it a crime to "engage in a sexual act with another person without that other person's consent, to include doing so through coercion" if the act takes place in the special maritime jurisdiction of the United States. Under 18 U.S.C. § 2426(b)(1)(B), conduct that would constitute a crime under § 2242 if such conduct had occurred in the special maritime jurisdiction is also considered "prohibited sexual conduct." The testimony at trial, and the jury's verdict, makes clear that defendant engaged in sexual acts with the minor victim on two separate occasions through coercion. Accordingly, even without payment for commercial sex, defendant's conduct when he assaulted the victim on the second occasion qualifies as a separate instance of prohibited sexual conduct.

This enhancement is thus properly applied.

### C. Sentencing Factors

In considering the 18 U.S.C. § 3553(a) sentencing factors, the United States asks that the Court consider the following:

**(1)     The nature and circumstances of the offense.**

As demonstrated over the course of the trial, defendant's conduct was egregious. He abused his position of power in the community and leveraged the desperate financial situation faced by his codefendant, Kristen Naylor-Legg, to coerce the minor victim to submit to sexual activity with him on two separate occasions. Both times he ensured that the victim was keenly aware of her utter inability to refuse him. On both occasions he wore his uniform, complete with his police-issued utility belt that carried a taser, a gun, and handcuffs, throughout the assaults. His badge was clearly displayed as he forced himself upon her. He held her down during the assaults. On the first

occasion, defendant arranged for the victim to be brought to an extremely isolated, wooded area where she had no means of escape and no ability to call for help. On the second occasion, defendant took the victim to a basement office of the Gauley Bridge Police Department and assaulted her in the shadow of the large police emblem painted on the wall.

As testified to by multiple witnesses at trial, defendant also sought to pimp out his victim to at least one other law enforcement officer – Christopher Osborne. Fortunately for C.H., Osborne ultimately, albeit for less than noble reasons, declined to accept defendant's offer. But Osborne's decision was not in any way a result of anything defendant did to withdraw his attempt to further exploit his minor victim.

One can only imagine the impact defendant's conduct had on a teenage girl trafficked by her stepmother. His actions destroyed her sense of safety, her ability to trust authority figures who are sworn to protect the people from crime, and forever left her with the emotional scars of sexual assault. However, defendant failed to anticipate his victim's remarkable bravery – despite everything, she came forward and reported the defendant's actions. She reported it to the very sheriff's department where defendant had been employed as a deputy for years.

Having underestimated the inner strength of C.H., defendant shifted his focus to obstruction. First, he told his coconspirator, Naylor-Legg, to lie about her relationship with him when she was interviewed by law enforcement. Then he repeatedly implored one of his former colleagues at the sheriff's department to make the whole case go away. These efforts to cover up his crime were ultimately to no avail, but his attempts to interfere with the enforcement of the laws he was sworn to uphold was no less reprehensible simply because they were unsuccessful.

The advisory guideline sentence of life accurately reflects the egregiousness of defendant's conduct.

>   (2)   Need for sentence imposed to reflect seriousness of the offense, respect for the law, just punishment, adequate deterrence, and to protect the public.

The serious nature of the offense and the need for just punishment for defendant's conduct, as described above, warrants a sentence of life for the sex trafficking convictions. Additionally, to promote respect for the law and provide adequate deterrence, an additional consecutive sentence of 10 years is appropriate for the obstruction offenses. Obstruction of justice, particularly by a sworn law enforcement officer, is the worst form of disdain for the law. If attempting to obstruct justice is not punished independent from the underlying offense, a lack of deterrence is not the only result. When a criminal does not receive additional punishment for obstructing justice, there is a perverse incentive created to attempt to tamper with witnesses or destroy evidence because there is no risk of a worse outcome and there is a chance of getting away with a crime. The fact that the sex trafficking offenses warrant a guideline sentence of life does not change the need for this additional consecutive sentence.

Moreover, the obstruction is not meaningfully accounted for in defendant's advisory guideline range. While he did receive a two-level enhancement for obstruction under USSC § 3C1.1, defendant's guideline calculation would have resulted in an adjusted offense level of 43 even without that enhancement. Accordingly, his obstruction enhancement had no impact whatsoever on his advisory guideline range. The only way to ensure he is held accountable for that conduct is through a consecutive sentence for the obstruction counts.

### D. Conclusion

Defendant has caused incalculable harm to his minor victim, his community, and the public's trust of law enforcement in general. Defendant committed a deplorable offense using his power as a chief of police. He then attempted to avoid accountability by tampering with a witness and seeking to have another law enforcement officer make the case go away. There is nothing

about defendant or his conduct that warrants a downward variance from the advisory guideline; instead, nearly every factor this Court should consider under 18 U.S.C. § 3553(a) points to the importance of the significant sentence recommended by the guidelines. The United States therefore respectfully requests that defendant be sentenced to life in prison on Counts 1 and 2, to run concurrent to each other, and 10 years in prison on Counts 3 and 4, to run concurrent to each other and consecutive to the sentences for Counts 1 and 2, resulting in a total sentence of life plus 10 years. Defendant should also be sentenced to a lifetime term of supervised release.

### E.  Time for Sentencing

The United States does not intend to present any witnesses at the sentencing hearing. The victim, C.H., would like to address the Court during the sentencing and has submitted a request for restitution. The United States anticipates the hearing should last approximately 1 hour.

Respectfully submitted,

WILLIAM S. THOMPSON
United States Attorney

/s/Jennifer Rada Herrald
JENNIFER RADA HERRALD
Assistant United States Attorney
WV Bar No. 12181
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone:  304-345-2200
Fax:  304-347-5104
Email: jennifer.herrald@usdoj.gov

CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "SENTENCING MEMORANDUM OF THE UNITED STATES" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 21st day of September, 2023 to:

Sebastian M. Joy, Esq.
2701 Louisa Street
P.O. Box 411
Catlettsburg, KY 41129
sjoy@joylawoffice.com

/s/Jennifer Rada Herrald
JENNIFER RADA HERRALD
Assistant United States Attorney
WV Bar No. 12181
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone:  304-345-2200
Fax:  304-347-5104
Email: jennifer.herrald@usdoj.gov